FILED

2006 May-03  PM 12:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MARQUIS CANTRELL DRAKES,** | ) |
| **Petitioner,** | ) |
| **VS.** | ) |
| **UNITED STATES OF AMERICA,** | ) |
| **Respondent.** | ) |

**CR-04-H-444-S**
**§ 2255 # 2:06-cv-8016-JHH**

## MEMORANDUM OF DECISION

Petitioner, Marquis Cantrell Drakes, has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  He challenges the validity of his 2005 conviction pursuant to a plea of guilty offered and accepted in CR-04-H-444-S.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was indicted on October 27, 2004, by the federal grand jury in the Northern District of Alabama in a three-count indictment alleging in Count One a violation of 21 U.S.C. § 841(a)(1), in Count Two a violation of 18 U.S. § 924(c)(1)(A) and in Count Three a violation of 18 U.S.C. § 922(g)(1) [Doc. #1].

Petitioner was originally represented by retained counsel Scott Boudreaux, who was allowed to withdraw after retained counsel Glennon Threatt entered an appearance for Drakes on November 29, 2005 (Doc. #9). Drakes, through counsel, entered into a plea agreement (Doc. #14) with the government wherein the government agreed to dismiss Count Three and to move for a three-level reduction for acceptance of responsibility and to recommend that he be sentenced at the low end of the sentencing guidelines in return for the petitioner's plea of guilty to Counts One and Two of the indictment. Additionally, the government agreed to afford Drakes the opportunity to cooperate in an effort to justify the filing of a motion by the government under 18 U.S.C. § 3553(e) and guideline § 5K1.1. The plea agreement contained a recitation of the factual basis for the plea as set forth in Exhibit A to this Memorandum of Decision and an acknowledgment of guilt and a limited waiver of right to appeal and to collaterally attack the convictions and sentences as set forth in Exhibit B to this Memorandum of Decision not to appeal the sentence imposed. [Doc. #5, Plea Agreement and Conditions, at 1, 4].

On January 3, 2005, petitioner, represented by retained counsel, withdrew his pleas of not guilty to the charges in Counts One and Two and pled guilty to both counts pursuant to the plea agreement. A copy of the entire court proceeding wherein the pleas of guilty were entered is set forth in Exhibit C to this

2

Memorandum of Decision. Before taking petitioner's pleas, the court placed petitioner under oath and questioned him extensively about his understanding of the terms of the plea agreement and his willingness to plea guilty. The court urged petitioner to interrupt the court proceeding if anything was being said or taking place that petitioner did not fully understand so that the court or his attorney could clear the matter up. Drakes acknowledged, under oath, that the plea agreement contained everything that he was relying on with regard to his pleas. He also stated that, before signing the agreement, he had ample opportunity to discuss the pleas with his attorney and that his attorney answered to his satisfaction any questions regarding the meaning of the plea agreement or how it might operate. In particular, petitioner acknowledged that he and his attorney specifically discussed the provision of the agreement wherein petitioner agreed to waive the right to appeal and collaterally attack the conviction and the sentence to be imposed. The court explained to petitioner that Count One carried a minimum custodial five-year sentence and that Count Two also carried a minimum custodial five-year sentence that had to be consecutive to the sentence under Count One.

On April 13, 2005, petitioner received a sentencing hearing. At that hearing, counsel for petitioner was asked if he or petitioner had found any factual inaccuracies in the presentence report. Counsel reported that none were found by

3

either.[1]  Prior to sentencing, the court invited comments from petitioner and from

his attorney.  Petitioner did not address the court, and his attorney simply urged

the court to impose the five-year statutory minimum under Count One to be

followed by the mandatory consecutive statutory minimum of five years under

Count Two.    Thereafter, the court sentenced petitioner to a term of 60 months

under Count One to be followed by a 60-month sentence for Count Two, running

consecutively, for a total sentence of 120 months.  Thereafter, the court queried

whether any party had any objections, other than any that had already been stated

in the record, to the court's finding of fact, the calculation of the sentencing

guidelines, the sentencing itself or the manner in which it was imposed.  Neither

petitioner nor his attorney responded.  The sentence which was imposed was

consistent with the plea agreement.  Petitioner did not appeal the conviction or

sentence.

About one year after the sentence was imposed, petitioner timely filed a

motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C.  § 2255.

He asserts that his plea of guilty was unknowing and involuntary largely as a result

of ineffective assistance of counsel, a ground that petitioner expressly reserved in

---

[1]  The court notes the recitation of facts in the presentence report, in all material respects,
is the same as set forth on Exhibit A hereto.

the plea agreement as a basis upon which to pursue a § 2255 motion. But having the right to pursue a § 2255 motion is of no benefit if he has no basis to prevail on the motion. And having reviewed the § 2255 motion against the record in this case, the court concludes the motion is totally without merit.

## DISCUSSION

Petitioner's basic claim in support of his motion is that ineffective assistance of counsel resulted in his pleas of guilty not having been offered knowingly and voluntarily. His argument, in essence, is that his pleas of guilty were "unknowing" because he was unaware he was pleading guilty under Count One to possessing with intent to distribute <u>in excess of 5 (five) grams</u> of a substance containing a detectable amount of cocaine base (crack) and consequently that he was denied due process. The indictment expressly charged in Count One in excess of five grams and the indictment was read to petitioner by the court during the court proceedings; petitioner, while under oath, acknowledged to the court he understood the charge and had had sufficient time to discuss the case and the plea agreement with his attorney; and petitioner, while under oath, stated he was satisfied with the services his attorney was providing. Petitioner's attorney advised the court that he had had a sufficient opportunity to investigate the charges, to consider any defenses petitioner may have had to the charges, and

generally to give petitioner counsel and advice. The plea agreement also expressly

set forth the weight of the drug charged as "5.49 grams of cocaine base (crack)",

and recited that such fact was agreed to and stipulated by petitioner. During the

presentation by the government of the facts which could be produced at a trial, the

Assistant United States Attorney expressly noted the evidence would establish that

the amount of cocaine base possessed by petitioner was in excess of five (5)

grams. Petitioner, while still under oath, agreed that the recited evidence was

substantially correct. Before the presentation by the government of the expected

evidence, the court expressly called to petitioner's attention that he could not be

found guilty under Count One at trial unless the jury found beyond a reasonable

doubt that in excess of five (5) grams of cocaine base was involved, and the court

urged petitioner to listen carefully to the government's attorney and to interrupt

him if he said anything that petitioner did not think was true or if he felt that the

government did not have some evidence to prove what was being said. Petitioner

did not interrupt the presentation. Still under oath, he then acknowledged to the

court that the factual presentation was substantially correct. Finally, petitioner

confirmed that he knew he was under no obligation to plead guilty.

Petitioner also argues that his pleas of guilty were involuntary because he

had "signed the (plea) agreement at the behest and coercion of counsel." This

6

argument is directly contradicted by the assurance petitioner gave the court while under oath that no person had promised him anything or threatened him in any manner to encourage him to enter his plea of guilty.

In *Strickland v. Washington*, 466 U.S. 668, (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Id*. at 687-88. With regard to an ineffective assistance claim related to the entry of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Here petitioner has not provided even an arguable basis upon which the court could conclude that his retained counsel's performance fell below an objective standard of reasonableness. Further, to the extent petitioner is endeavoring to raise a ground in support of his motion other than ineffective assistance of counsel, petitioner expressly waived in the plea agreement the right to post-conviction relief pursuant to 28 U.S.C. § 2255 (petitioner expressly

reserved the right to pursue a claim under § 2255 for ineffective assistance of counsel). The waiver is valid because the court specifically questioned petitioner and his attorney about the provisions during the plea colloquy and was advised by both that they specifically discussed the waiver provision. Moreover, the waiver is also valid because it is manifestly clear from the record that petitioner fully understood the significance of the waiver.[2] *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993).

A separate final judgment will be entered denying the April 14, 2006 § 2255 motion.

**DONE** this the _3rd_ day of May, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Petitioner advised the court, while still under an oath, that he had not taken any drugs, medication or narcotics of any kind during the past 72 hours. He also stated there was nothing that prevented him from understanding anything his attorney was saying while discussing the case with him or understanding the nature of the charges against him or understanding the matters stated to him by the court.

(d) <u>FACTUAL BASIS FOR PLEA</u>

[The defendant hereby agrees and stipulates to the accuracy of the following information. The defendant agrees that the information here may be used for sentencing purposes and waives any

On April 7, 2004, BPD Officer Shelly Pennington conducted a traffic stop on Lacoyia Holcombe for failure to employ a turn signal while driving a 2001 Chevrolet. Drakes was a passenger in the car. A check of the NCIC revealed the driver had outstanding misdemeanor warrants. Drakes' drivers license had been suspended, also. An inventory search of the car revealed:

-a stolen, loaded Beretta .40 caliber pistol under the front dash of the vehicle,

-a bag of marijuana with pink pills (Loratabs),

-a plastic bag with 45 bags of crack cocaine

-two small bags of marijuana,

-a small bag of marijuana was found on the passenger seat where Drakes had been seated,

-$1,156 cash was recovered from Drakes front pants pocket, and

-a box of sandwich bags which had been purchased by Drakes at a Chevron Service just prior to the traffic stop.

On April 7, 2004, Holcombe was advised of the Miranda Rights, which she waived. She denied any knowledge of the firearm or the drugs. She stated that the car belonged to her sister.

On April 7, 2004, Drakes was advised of the Miranda warnings, which he waived. He stated that he smoked marijuana and traded cocaine to people for favors. He stated that Holcombe had no

EXHIBIT A

knowledge of the drugs or the firearm; he admitted possession. He stated that he purchased the gun from a person in Gate City Housing Projects for $100.00, for protection.

The firearm had previously traveled in interstate commerce. It was found to be operable by forensic scientist, Mitch Rector, on May 10, 2004.

On April 27 and 28, 2004, Sonya Hollingshead, forensic scientist, Alabama State Department of Forensic Sciences, opined that the drugs were: **5.49 grams of cocaine base (crack), 2.14 grams of cocaine hydrochloride, and 22.68 grams of marijuana.**

Drakes had incurred a previous conviction for Possession of Marijuana, on March 15, 1999, in case number CC98-3305, in the Circuit Court of Jefferson County, Alabama.

## ACKNOWLEDGMENT OF GUILT

The defendant is pleading guilty to the charges described above because the defendant is in fact guilty. Should the defendant move the court to accept the plea of guilty under the provisions of <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), or tender a plea of <u>nolo contendere</u>, the plea agreement described above will be null and void and the United States will not be bound by any agreement, understanding, provision, or stipulation, express or implied in this document.

## WAIVERS

By pleading guilty the defendant waives and agrees to waive any and all motions, defenses, objections, or requests which have been made or which could have been made in this case. The defendant also waives the right to trial by a jury (or by a judge if the defendant elected to be tried by a judge alone).

At any such trial the defendant would have the right to assistance of counsel, to confront and cross-examine the witnesses against the defendant, to present evidence on the defendant's behalf, to compel the attendance of witnesses for the defense, and to testify or refuse to testify.

The United States would have the burden or proving the case against the defendant beyond a reasonable doubt. The defendant would be presumed innocent and could only be convicted if a jury of twelve people (or a judge if the defendant elects to be tried by a

5

*EXHIBIT B*

judge) unanimously found the defendant to be guilty beyond a reasonable doubt. The defendant would have the right to appeal a guilty verdict.

I MARQUIS CANTRELL DRAKES

do hereby agree to have my sentence determined pursuant to the Federal Sentencing Guidelines. In so doing, I expressly waive all constitutional challenges to the validity of the Federal Sentencing Guidelines (including facts that support any specific offense characteristic, other enhancement or adjustment, or upward departures) alleged in the indictment and found by a jury beyond a reasonable doubt. My attorney has explained to me that I may be entitled to a jury determination of such facts pursuant to <u>Blakely v. Washington</u>, however, I have determined it is in my best interest to have my sentence determined by the judge.

All these rights and protections are hereby waived.

### DEFENDANT'S DECLARATION

In consideration of the government's recommended disposition I, MARQUIS CANTRELL DRAKES , the defendant, herein knowingly and voluntarily waives my right to appeal the plea regarding <u>all</u> non-jurisdictional issues, (<u>United States v. Bushert</u>, 997 F.2d 1343 (11th Cir. 1993)), as well as post-conviction relief pursuant to Title 28 U.S.C. Section 2255.

Furthermore, in consideration of the government's recommended disposition, I MARQUIS CANTRELL DRAKES , do hereby waive and give up my right to appeal my conviction in this case, any sentence the court might impose upon me, and the right to challenge any

sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C.§ 2255, subject to the following limitations:

The defendant reserves the right to contest in an appeal or post-conviction proceeding any/all of the following:

(a) Any punishment imposed in excess of the statutory maximum;

(b) Any punishment that constitutes an upward department from the guidelines sentencing range as determined by the court at the time sentence is imposed; and

(c) Any claim of ineffective assistance of counsel.

In addition, the defendant reserves the right to petition the court for re-sentencing, in accordance with 18 U.S.C. § 3582(c), in the event of a future retroactive amendment to the U.S.S.G that would affect the defendant's sentence.

I further acknowledge that before giving up these rights, I discussed the Federal Sentencing Guidelines (U.S.S.G.) and their application to my case with my attorney, who explained them to my satisfaction. I understand that pursuant to Blakely v. Washington, I may have the right to have a jury find, beyond a reasonable doubt, any facts used in determining my sentence. I hereby waive the right and agree to have my sentence determined by the judge using the U.S.S.G., based upon the preponderance of evidence standard.

I hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraph and that I

am knowingly and voluntarily giving up appeal and
sentencing rights as stated.

_____1|2|05_____          _Marguis Nenters_____
DATE                          DEFENDANT'S COUNSEL

      I have reviewed this document and agree to it provisions.

_____1|2|05_____          _____DEFENSE COUNSEL_____
Date

                              ALICE H. MARTIN

                              United States Attorney


_____1|3|05_____          _____FOR FRANK SALTER____
DATE
                              FRANK M. SALTER

                              Assistant United States Attorney

FILED

2006 May-02  PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

1
             IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
2
                 SOUTHERN DIVISION

3

4

5  UNITED STATES OF AMERICA,     )
                        )   Case No. CR04-H-444-S
                        )
6  VS.                   )   Birmingham, Alabama
                        )
7                      )   January 3, 2005
  MARQUIS CANTRELL DRAKES,      )
8                      )   9:00 a.m.
       DEFENDANT.         )
9

10
            *   *   *   *   *   *   *
11

12                  TRANSCRIPT OF PLEA
      HELD BEFORE THE HONORABLE JAMES H. HANCOCK
13         SENIOR UNITED STATES DISTRICT JUDGE

14
  **APPEARANCES:**
15

16  FOR THE GOVERNMENT:         BRAD FELTON
                               Assistant U.S. Attorney
17                           1801 4th Avenue North
                                Birmingham, AL 35203
18

19  FOR THE DEFENDANT:          GLENNON F. THREATT, JR.
                                Miller Hamilton Snider & Odom
20                           1200 Financial Center
                                Birmingham, AL 35203
21

22  COURT REPORTER:           Karla Johnson, RPR,RMR
                                Hugo Black Courthouse
23                           1729 5th Avenue N., Ste 325
                                Birmingham, AL 35203
24

25

1  January 3, 2005                              9:00 a.m.

2                    **P R O C E E D I N G S**

3                        *(OPEN COURT)*

4          THE COURT:   The matter to be taken up at this time

5  is the case of the United States of America versus Marquis

6  Cantrell Drakes, CR04-H-444-S.

7      On November 17 of last year, the defendant, Mr. Drakes,

8  entered a plea of not guilty to a three count indictment

9  charging him with three specific offenses against the laws of

10  the United States and the matter is currently set for trial

11  next week.

12      The defendant and his attorney, Mr. Threatt, are in court

13  at this time, however, because the Court understands that the

14  defendant desires to withdraw his earlier plea of not guilty

15  to one or more of the charges in the indictment and to enter a

16  plea of guilty to one or more charges.  Is that correct, Mr.

17  Threatt?

18          MR. THREATT:   That is, Your Honor.

19          THE COURT:   To which count or counts does the

20  defendant desire to withdraw his earlier plea of not guilty?

21          MR. THREATT:   Your Honor, there's a guilty plea

22  agreement in this case.  And the conditions of the plea

23  agreement is my client will be entering a plea of guilty to

24  Counts 1 and 2; and Count 3 will be dismissed.

25          THE COURT:   All right.  Mr. Drakes, the withdrawal

1   of your earlier plea of not guilty to the charges preferred
2   against you in Counts 1 and 2 is accepted.  But before I can
3   accept the plea of guilty from you to those two counts, there
4   are certain matters into which I must inquire and this will
5   necessitate your being placed under an oath.

6       While you're under that oath, I want to emphasize to you,
7   that any statements that you make must be truthful statements.
8   Any answers that you give to questions, must be truthful
9   answers.  Because a false answer or a false statement could be
10  used against you later as the basis upon which to prosecute
11  you for perjury or false statement.  Do you understand that?
12          DEFENDANT DRAKES:  Yes, sir.
13          THE COURT:  All right.  I'm going to request that an
14  oath be administered.
15              (*DEFENDANT MARQUIS CANTRELL DRAKES, SWORN*)
16          THE COURT:  Mr. Drakes, if anything is said here
17  this morning that you do not fully understand, or if anything
18  takes place in this courtroom this morning that you do not
19  fully understand, I want you to interrupt the proceedings.
20  Just ask me to stop the proceedings and ask me to clear the
21  matter up for you, or ask me to give you the opportunity,
22  privately, to talk to Mr. Threatt, your attorney, so that he
23  can answer your questions and clear the matter up.  Do you
24  understand that?
25          DEFENDANT DRAKES:  Yes, sir.

1    THE COURT:  It's not uncommon for a plea of guilty,
2  such as the one that you're offering here this morning, to be
3  offered in reliance upon some plea bargain or plea agreement,
4  between the defendant, or his attorney, and the U.S.
5  Attorney's office.

6    Plea bargains and plea agreements are certainly
7  permissible but they're not binding on the Judge or the Court.
8  But where they exist and where a defendant is entering his
9  plea of guilty in reliance upon the plea agreement, the
10  defendant, his attorney, and the U.S. Attorney's office, all
11  have the obligation to disclose that fact to the Court and to
12  tell the Court the essential terms and conditions of any plea
13  bargain or any plea agreement upon which a defendant might be
14  relying when he enters his plea of guilty.

15    At this time, I'm going to ask Mr. Brad Felton, the
16  Assistant U.S. Attorney, to advise the Court the extent of
17  that office's knowledge, of any plea bargain or plea agreement
18  upon which Mr. Drakes might be relying here this morning.  Mr.
19  Felton.

20    MR. FELTON:  Your Honor, upon your acceptance of
21  this plea, the government would recommend the following:  That
22  the defendant plead guilty, of course, to Counts 1 and 2; and
23  the government will move to dismiss Count 3 of the indictment.

24    The United States will also recommend a three point
25  credit for acceptance of responsibility and ask that the

1    defendant be sentenced at the low end of the guideline range,

2    whatever that may be, at the sentencing hearing.

3         The government may also file a 5K1.1 motion upon the

4    defendant's substantial cooperation in the matter.  That would

5    be the substantial part of the agreement.

6              THE COURT:  You're holding a document in your hand.

7    I assume that that is a copy of the written plea agreement

8    that was earlier filed this morning which Mr. Threatt

9    referred.

10             MR. FELTON:  It is, Your Honor.

11             THE COURT:  Does that document set forth everything

12   that you and your office are aware of that Mr. Drakes might be

13   relying upon at this time?

14             MR. FELTON:  It does, Your Honor.

15             THE COURT:  Mr. Threatt, you have there, also, a

16   copy of the written plea agreement that was earlier filed this

17   morning.  Does that set forth everything that you are aware of

18   that Mr. Drakes is relying upon at this time by way of a plea

19   bargain or a plea agreement?

20             MR. THREATT:  It does, Your Honor.  It was provided

21   to us prior to today's hearing.  It's been shared and

22   explained to Mr. Drakes.  A copy has been provided to him.

23   His signature, as well as mine, are on the document.

24             THE COURT:  Before you signed it and before he

25   signed it, did you have ample opportunity fully to discuss it

1 | with him?

2 | MR. THREATT:  I did, Your Honor.  Not only had I
3 | discussed this one with him but this was the second one that
4 | we had done because there were revisions to it.  So I had an
5 | opportunity to discuss it with him and he understands.

6 | THE COURT:  Did he have any questions of you with
7 | regard to the meaning of the agreement or how it might operate
8 | that you do not feel you were able to answer to his
9 | satisfaction?

10 | MR. THREATT:  No, Your Honor.  He had numerous
11 | questions.

12 | THE COURT:  I can imagine so.

13 | MR. THREATT:  He had numerous questions and I did my
14 | best to explain them to him.

15 | THE COURT:  Did you specifically discuss with him
16 | his waiver of his right to appeal the plea of guilty and the
17 | conviction, and his waiving of the Blakely issues and his
18 | waiving of his right to appeal a sentence, except under the
19 | specific instances set forth in the plea agreement, there was
20 | some things that were preserved; but, otherwise, did you
21 | discuss all of that with him?

22 | MR. THREATT:  I did, Your Honor.  We went over both
23 | the Blakely, as well as the Bouchard case (phonetic), which is
24 | an Eleventh Circuit case, which affects the defendant's
25 | ability to waive certain rights under appeal.  I explained all

1   of that to him.  And, as I indicated earlier, he had an
2   opportunity to read it and ask me any questions that he had.
3            THE COURT:  Someday I'll get you to explain it all
4   to me, too.
5            MR. THREATT:  Hopefully, those on high will explain
6   it to all of us shortly.
7            THE COURT:  At least with regard to part of it.  Mr.
8   Drakes, you can remain seated.  You have there in front of you
9   a 12-page written plea agreement that bears your signature on
10  Page 12 that was filed with the Court today.  It also has Mr.
11  Threatt's signature and also has an Assistant U.S. Attorney's
12  signature on it.
13       Does that document there in front of you tell me
14  everything that you are relying upon, at this time, by way of
15  a plea bargain or a plea agreement?
16            DEFENDANT DRAKES:  Yes, sir.
17            THE COURT:  Before you signed the agreement, did you
18  have ample opportunity fully to discuss it with Mr. Threatt?
19            DEFENDANT DRAKES:  Yes, sir.
20            THE COURT:  Did you have any questions of him with
21  regard to the meaning of the agreement or how it might operate
22  that he did not answer to your satisfaction?
23            DEFENDANT DRAKES:  No, sir.
24            THE COURT:  Specifically, did you all discuss the
25  fact that you were waiving your right to appeal the plea of

1    guilty, or the conviction, and that you were waiving your
2    right to challenge, collaterally, in some other court or some
3    other proceeding, the conviction that otherwise will come
4    about as a result of this plea of guilty, and that you were
5    waiving your right to have a jury decide certain issues that
6    might be relevant in the sentencing process and other waivers
7    in there?  Did you all specifically discuss that?
8            DEFENDANT DRAKES:  Yes, sir.
9            THE COURT:   The U.S. Attorney's office has taken on
10   certain responsibilities under this written plea agreement and
11   it must discharge those responsibilities and those obligations
12   consistent with the terms of the written plea agreement.  But
13   do you understand that the written plea agreement is not
14   binding on the Judge or the Court?
15           DEFENDANT DRAKES:  Yes, sir.
16           THE COURT:   Do you understand, for example, that if
17   I accept the plea of guilty here this morning, at such time
18   later when we proceed with sentencing, I could structure a
19   sentence precisely in accordance with the plea agreement or
20   recommendations made by the government consistent with the
21   plea agreement; or I could structure a sentence that could be
22   viewed as more severe, or less severe, than the one
23   contemplated and, yet, you could not withdraw your plea of
24   guilty.  Do you understand that?
25           DEFENDANT DRAKES:  Yes, sir.

1      THE COURT:  Has anyone promised you anything or
2  threatened you in any way to encourage you to enter this plea
3  of guilty?
4      DEFENDANT DRAKES:  Yes, sir.
5      THE COURT:  Someone has promised you something?
6      DEFENDANT DRAKES:  No, no.
7      THE COURT:  Let me ask that again to be certain.
8  Has anybody promised you anything or threatened you in any way
9  to encourage you to enter this plea of guilty?
10      DEFENDANT DRAKES:  No, sir.
11      THE COURT:  I am required to explain to a defendant,
12  as I take a plea of guilty, what the maximum penalties are for
13  the offenses to which the defendant is entering a plea of
14  guilty.  This is not to suggest that the maximum penalties
15  will be imposed.  But I am obligated to explain both maximum
16  penalties and minimum penalties to a defendant at the time he
17  enters his plea of guilty.
18      The offense charged in Count 1 could carry with it a fine
19  of $250,000 and a sentence of not more than 40 years.  And it
20  carries with it a mandatory sentence of not less than 5 years.
21  It also carries with it a term of supervised release of not
22  less than 4 years to follow the period of incarceration.  Do
23  you understand that?
24      DEFENDANT DRAKES:  Yes, sir.
25      THE COURT:  And with regard to Count 2, the second

1  count, the maximum penalty which could be imposed would be a
2  fine also of $250,000, and a term of not less than 5 years,
3  which must be imposed consecutive to the sentence imposed
4  under Count 1.  And the maximum penalty under Count 2 could
5  indeed reach life imprisonment.  Do you understand that?
6            DEFENDANT DRAKES:  Yes, sir.
7            THE COURT:  The sentence under Count 2, also, would
8  carry with it a term of supervised release, but that would
9  just be one of not more than 5 years and the usual $100
10  special assessment fee.  Do you understand that?
11            DEFENDANT DRAKES:  Yes, sir.
12            THE COURT:  Do you understand that any sentence that
13  the Court imposes must be structured pursuant to certain
14  sentencing guidelines that have been developed?  And those
15  guidelines are structured to inform the Court of what a normal
16  range for a sentence, in this particular case, involving you,
17  should fall.  And the Court is told to impose a sentence
18  within that range, unless for some reasons, consistent with
19  the guidelines, the Court feels like it is appropriate to
20  depart above that range or below that range.
21      For example, in this particular case, I know the U.S.
22  Attorney's office and you have reached an agreement that would
23  provide you an opportunity to what they call cooperate, and
24  that's described in the plea agreement, in which event the
25  government might move, if it's what they view, in their

1  opinion, as sufficient cooperation, might move for a departure
2  downward from that guideline range.

3      The point is that I am required to obey the sentencing
4  guidelines and impose a sentence within that range, or for
5  reasons consistent with the guidelines, one below or above
6  that range.  Do you understand that?

7          DEFENDANT DRAKES:  Yes, sir.

8          THE COURT:  Do you also understand that you have the
9  right to insist upon the earlier plea of not guilty that you
10  entered to these two charges at the time of your arraignment?
11  And, if you do so, then the burden is on the government to
12  prove to a jury, beyond a reasonable doubt at a trial, where
13  you would be entitled to the assistance of a lawyer and where
14  you could not be compelled to incriminate yourself or give
15  evidence against yourself.  But that with this plea of guilty
16  this morning, that ends the matter.  There will be no jury
17  trial.  There will be no further presumption of innocence.
18  And there will be no opportunity for you to confront or
19  cross-examine witnesses whose testimony otherwise would be
20  necessary.  Do you understand that?

21          DEFENDANT DRAKES:  Yes, sir.

22          THE COURT:  Do you understand that with this entry
23  of a plea of guilty this morning, the plea of guilty cannot be
24  withdrawn?  Do you understand that?

25          DEFENDANT DRAKES:  Yes, sir.

1        THE COURT:  Is there anything, in your opinion, Mr.
2   Drakes, that prevents you from understanding anything that I'm
3   saying to you at this time, or that prevents you from
4   understanding anything that Mr. Glennon Threatt says to you
5   when he discusses this matter with you, or that prevents you
6   from understanding the nature of the charges preferred against
7   you in this indictment, including the two counts to which
8   you're entering your plea of guilty, as well as the one count
9   that is to be dismissed pursuant to the written plea
10  agreement?  Is there anything that prevents you from
11  understanding any of that?
12        DEFENDANT DRAKES:  No, sir.
13        THE COURT:  Have you, within the past 72 hours,
14  taken any drugs, or medications, or narcotics, of any kind?
15        DEFENDANT DRAKES:  No, sir.
16        THE COURT:  Count 1 of the indictment charges, in
17  essence, that in early April of last year, April 7, 2004, you
18  did knowingly, intentionally, and unlawfully possess with the
19  intent to distribute in excess of 5 grams of a mixture and
20  substance containing a detectable amount of cocaine base, more
21  commonly referred to as "crack cocaine," in violation of law.
22  Do you understand that charge?
23        DEFENDANT DRAKES:  Yes, sir.
24        THE COURT:  It's my understanding from the written
25  plea agreement, that the amount of crack cocaine that was

1    involved in the transaction, and to which you have stipulated
2    in the plea agreement, was 5.49 grams; is that correct?
3                 DEFENDANT DRAKES:  Yes, sir.
4                 THE COURT:  Count 2 of the indictment charges, in
5    essence, that on or about the same date, you did knowingly
6    carry a firearm, that is, a Beretta .40 caliber pistol, during
7    and in relation to the drug trafficking offense charged in
8    Count 1 of the indictment.  Do you understand that charge?
9                 DEFENDANT DRAKES:  Yes, sir.
10                THE COURT:  Have you had a sufficient opportunity to
11   discuss both of these charges with Mr. Threatt?
12                DEFENDANT DRAKES:  Yes, sir.
13                THE COURT:  Have you had a sufficient opportunity
14   also to discuss the third charge that is to be dismissed, with
15   him?
16                DEFENDANT DRAKES:  Yes, sir.
17                THE COURT:  Are you satisfied with his services?
18                DEFENDANT DRAKES:  Yes, sir.
19                THE COURT:  Mr. Threatt, are you satisfied that Mr.
20   Drakes fully understands all three of these charges?
21                MR. THREATT:  I am, Your Honor.  Although this Court
22   does not require it, there's a Guilty Plea Advice of Rights
23   form that some judges use, and I use it as a guideline to take
24   my client through to make sure that he understands all of the
25   rights that he's waived; and he has gone through that form and

1 executed it.

2      THE COURT:  Mr. Drakes, if the charge in Count 1
3 were to proceed to trial next week, as scheduled, before there
4 could be a verdict of guilty under that count, the government
5 would have to prove, beyond a reasonable doubt, to a jury two
6 things:

7      First, that on or about the date charged, that is April
8 7th of last year, you did knowingly and willfully possess
9 cocaine base in the amount of over 5 grams, as charged.

10      And second, that you possessed that cocaine base or crack
11 with the intent to distribute it.  Do you understand that?

12           DEFENDANT DRAKES:  Yes, sir.

13           THE COURT:  If the offense charged in Count 2 were
14 to go to trial, before there could be a verdict of guilty
15 under Count 2, the government would have to prove, beyond a
16 reasonable doubt to a jury, the following three things:

17      First, that you did in fact commit the drug trafficking
18 offense charged in Count 1.  In other words, they would have
19 to have already found you guilty under Count 1.  That's the
20 first element they would have to prove.

21      Second, the government would have to prove that, during
22 the commission of that offense, you knowingly carried the
23 Beretta as charged in the indictment.

24      And third, that you carried the Beretta firearm in
25 relation to the drug trafficking offense charged in Count 1.

1  Do you understand that?

2           DEFENDANT DRAKES:  Yes, sir.

3           THE COURT:  All right.  I want you to listen very

4  carefully to Mr. Felton, the Assistant U.S. Attorney, because

5  he's going to outline for you and for me, some of the evidence

6  that he would expect to offer to a jury, if this case were to

7  proceed to trial.

8      And if, while he is talking, he says anything that you do

9  not think is true or that you do not think he has some

10  evidence that he could introduce in court to prove, I want you

11  to stop him, just interrupt him as he is talking and then

12  let's you and me discuss what he will have just said that you

13  question or take issue with, okay?

14           DEFENDANT DRAKES:  Yes.

15           THE COURT:  Okay.  Listen very carefully.

16           MR. FELTON:  Your Honor, if this case proceeded to

17  trial, the government would prove the following:

18      That on April 7, 2004, a Birmingham police officer

19  conducted a traffic stop on Ms. Holcombe for failure to avoid

20  a turn signal, in a 2001 Chevrolet.  The defendant, Mr.

21  Drakes, was a passenger in that car.

22      A records check revealed that the driver, Ms. Holcombe,

23  had an outstanding misdemeanor warrant, and Mr. Drakes had his

24  driver's license suspended, so no one could drive the car

25  away.

1    An inventory search of the car revealed a stolen Beretta

2    .40 caliber pistol, a bag of marijuana with some pink pills in

3    it, a plastic bag with 45 bags of crack cocaine, two small

4    bags of marijuana, and a small bag of marijuana was found in

5    the passenger's seat where Mr. Drakes was seated.  Also, there

6    was $1,156 in cash recovered from Mr. Drakes, from his pants

7    pocket; and a box of sandwich bags purchased by Mr. Drakes at

8    the service station prior to the traffic stop.

9    The co-defendant, Ms. Holcombe, was advised of her rights

10   and she denied any knowledge of the firearm and stated the car

11   belonged to her sister.  Mr. Drakes was advised of his *Miranda*

12   warnings and waived those warnings and gave a statement in

13   which he admitted to smoking marijuana and trading cocaine to

14   people for favors.  He stated that Ms. Holcombe had no

15   knowledge of the drugs and the firearms and he admitted to

16   their possession.  He stated he purchased the firearm from a

17   person at the Gate City housing project for $100 as

18   protection.

19   The firearm had previously traveled in interstate

20   commerce and was found to be operable by Mitch Rector, a

21   forensic scientist.  The alleged drugs were tested and found

22   to be, in fact, 5.49 grams of cocaine base, 2.14 grams of

23   cocaine hydrochloride, and 22.69 grams of marijuana.  All of

24   these things occurred in the Northern District of Alabama.

25        THE COURT:  Mr. Drakes, are the facts as briefly

1  outlined by the Assistant U.S. Attorney substantially correct?

2          DEFENDANT DRAKES:   Yes, sir.

3          THE COURT:   Do you understand that you are under no

4  obligation to enter a plea of guilty to these charges?

5          DEFENDANT DRAKES:   Yes, sir.

6          THE COURT:   Do you understand that you are free at

7  this moment, but this is the last time that you would be free,

8  to withdraw the plea of guilty that you're in the process of

9  entering, and to reinstate the earlier plea of not guilty that

10 you entered at the time of your arraignment on November 17?

11 Do you understand that?

12          DEFENDANT DRAKES:   Yes, sir.

13          THE COURT:   Do you still desire to enter a plea of

14 guilty to Counts 1 and 2 of this indictment?

15          DEFENDANT DRAKES:   Yes, sir.

16          THE COURT:   The Court finds that the defendant's

17 plea of guilty is freely, knowingly, and voluntarily offered

18 by him, and that the requisite factual basis exists to support

19 the plea, and the plea is going to be accepted.

20     In connection with the entry of the plea, the government

21 and the defendant entered into a written plea agreement and

22 the government has filed a motion to place that written plea

23 agreement under seal, and that motion is granted.

24     We're going to necessarily have to continue this matter

25 for sentencing for a substantial period of time to allow a

1  full presentence report to be developed, and then to give you,

2  Mr. Drakes, and your attorney, and the government, and me, a

3  full opportunity to review it.

4      But I would like to set a date now that at least the

5  attorneys currently do not see any reason why we could not

6  start with that as a sentencing date, keeping in mind that we

7  could move that if something developed in the meantime.  I'm

8  looking at Thursday, April the 21st, at 10:30 in the morning.

9  It's a long way away but --

10         MR. THREATT:  Your Honor, I expect to start the

11  Ensley police officer shooting trial on April the 18th.  If

12  Your Honor could set it prior to that, it would facilitate my

13  calendar.

14         THE COURT:  All right.  Let's see if we can't do

15  that.  How long is that going to last, do you think?

16         MR. THREATT:  Your Honor, I've been told by the

17  state that they expect to introduce about two weeks of

18  testimony in that case.  With the jury selection, it could go

19  three to three-and-a-half weeks.

20         THE COURT:  Well, what about Monday, April the 4th,

21  at 9:00?

22         MR. THREATT:  That's great.

23         THE COURT:  I'm not used to looking at the 2005

24  calendar but we'll tentatively set it for that date and then

25  we can work around it if something comes up either with the

1    Court or with you all.

2              MR. THREATT:   Thank you.

3              THE COURT:   Anything else to take up, Mr. Felton?

4              MR. FELTON:   No, sir.   Not at this time.

5              THE COURT:   All right.   Court will be in recess.

6                        *(COURT ADJOURNED)*

7

8    STATE OF ALABAMA   )

9    JEFFERSON COUNTY   )

10

11          I hereby certify that the foregoing is a true and

12   correct transcript of the record of proceedings in the

13   above-entitled matter.

14

15

16

17

18                        *Karla S. Johnson*

19                        Karla S. Johnson, RPR, RMR
                          Federal Official Reporter
20                        Date: 5-2-06

21

22

23

24

25